**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-22366-Civ-BECERRA/TORRES

EDWARD ALTIDOR,

*Plaintiff,*

v.

CITY OF HIALEAH,

*Defendant.*
_________________________________________/

## ***REPORT AND RECOMMENDATION ON MOTION TO DISMISS***

This matter is before the Court on Defendant City of Hialeah's ("the City") Amended Motion to Dismiss Plaintiff's First Amended Complaint (the "FAC"), or, Alternatively, for a More Definite Statement ("the Motion"). [D.E. 31]. Plaintiff Edward Altidor ("Plaintiff" or "Altidor") is a Black fire division chief of Bahamian national origin, and he is suing the City of Hialeah for denying him two promotions because of his race and national origin, subjecting him to a hostile work environment, and retaliating against him for complaining about a colleague. The question presented on the motion, filed by the City under Rule 12(b)(6) or for more definite statement under Rule 12(e), is which if any of those claims Plaintiff has plausibly alleged in the FAC. Plaintiff responded [D.E. 32];[1] the City did not reply.

[1] Plaintiff's Response was due June 3, 2026. See S.D. Fla. L.R. 7.1(c)(1). It was filed on June 16, 2026—thirteen days late. Plaintiff did not seek an extension under Federal Rule of Civil Procedure 6(b)(1)(B), and the "Nunc Pro Tunc" designation in

After reviewing the Motion, the response, the FAC [D.E. 15], and the relevant authorities, the Court concludes that the claims arising from the Deputy Chief of Administration position are adequately pleaded under both Title VII and the Equal Protection Clause. The remaining claims are not. Specifically, the motion should be Granted in part because (1) Counts I through III fail because § 1981 does not supply a cause of action against a municipality and those counts do not invoke § 1983; (2) the hostile work environment count fails to allege that the harassment was based on a protected characteristic; and (3) the First Amendment retaliation count fails to allege protected citizen speech. The motion should be Denied in part because the Title VII discrimination counts state a claim and the equal protection counts adequately allege municipal liability.

Therefore, we recommend that the Motion be **GRANTED IN PART and DENIED IN PART**.[2]

## *I. BACKGROUND*

Altidor is a Black American male of Bahamian national origin and Haitian descent who has served the City of Hialeah Fire Department for approximately

the Response's caption is of no effect; such relief is granted by a court on motion and cannot be self-conferred. *See Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020) (per curiam) (nunc pro tunc orders "are not some Orwellian vehicle for revisionist history") (citation omitted); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1261 (11th Cir. 2021). The Court nevertheless exercises its discretion to consider the Response so that the Motion may be resolved on the merits. Counsel is reminded of the obligation to comply with the Local Rules and, where a deadline has passed, to seek leave.

[2] On September 11, 2026, the Honorable Jacqueline Becerra referred this matter to the Undersigned Magistrate Judge for a Report and Recommendation.

twenty-five years, and who now holds the rank of Division Chief of Professional Standards and Compliance. [D.E. 15 at ¶¶ 1–2]. Throughout that tenure he received satisfactory or better evaluations. [*Id.* at ¶ 3]. He sought a promotion for a higher ranked position with the Department, as Assistant Chief of Operations.[3]

### ***A. The promotional examination***

In July and August of 2023, Altidor sat for the written and oral portions of a promotional examination for Assistant Chief of Operations, the oral component administered by three independent fire chiefs. [D.E. 15 at ¶¶ 4–5]. Six candidates competed; three passed and three failed. [*Id.* at ¶ 6]. Altidor ranked first overall. Two Hispanic candidates ranked second and third. [*Id.* at ¶ 7]. Altidor concludes that he should have become, to his knowledge, the first Black individual promoted to the position of Assistant Chief of Operations. [*Id.* at ¶ 11].

The unsuccessful candidates challenged the examination. [*Id.* at ¶ 8]. That challenge was rejected at every level of review—Human Resources, the City Attorney, and the Mayor—each of whom validated the examination and certified the promotional list. [*Id.* at ¶ 9]. Despite that certification, the City required the three successful candidates, and only the three successful candidates, to retake the oral examination on March 11, 2025. [*Id.* at ¶ 10].

[3] As we are addressing the FAC on a motion to dismiss, we assume all pleaded factual allegations are true and grant all inferences in Altidor's favor.

### ***B. The cheating allegation***

A Hispanic firefighter who originally failed the examination filed a complaint alleging that Altidor cheated. [D.E. 15 at ¶ 12]. Internal Affairs investigated, notwithstanding the complainant's admission that he had no evidence. [*Id.* at ¶ 13]. Every test administrator and senior Fire Department official confirmed that no cheating occurred, and no disciplinary findings were made. [*Id.* at ¶¶ 14–15]. Altidor insists, however, that he was still publicly labeled a "cheater," while, he alleges, similarly situated non-Black candidates who also passed were not subjected to comparable scrutiny. [*Id.* at ¶ 16]. Human Resources met with Hispanic candidates who had ranked below Altidor but refused to meet with Altidor or with another Black Division Chief who had taken the same examination. [*Id.* at ¶ 17].

### ***C. The Deputy Chief position***

Some time before this controversy, in February 2024, then-Fire Chief Willians Guerra verbally offered Altidor the position of Deputy Chief of Administration (not to be confused with the position of Assistant Chief of Operations), which Altidor accepted and for which he was already performing many of its duties. [*Id.* at ¶ 18]. But shortly thereafter he was told the position had been abolished and would not be filled. [*Id.* at ¶ 19]. That representation, Altidor alleges, was false: on or about October 1, 2024, the City appointed two Hispanic individuals to Deputy Chief positions. [*Id.* at ¶ 20]. Altidor was never reconsidered, interviewed, or offered reinstatement to the position. When he asked why, Chief Guerra told him the City "selected who they wanted." [*Id.* at ¶ 21].

### *D. The media statements and the City's response*

Altidor reported to the City's Human Resources Director on or about November 5, 2024 that District Chief Robert Ortega had violated City media policy and made false, defamatory statements to the media concerning Altidor. [D.E. 15 at ¶¶ 22, 192]. Human Resources did not meaningfully investigate and took no corrective action. [*Id.* at ¶ 23]. Ortega continued making the statements publicly, on shift, and through a an employee WhatsApp group chat. [*Id.* at ¶¶ 24, 193]. Altidor issued a Cease and Desist for Defamatory Conduct. [*Id.* at ¶¶ 25, 193].

### *E. The pending lawsuit*

Altidor filed charges with the Equal Employment Opportunity Commission and the Miami-Dade County Commission on Human Rights, received a Notice of Right to Sue, and filed suit in state court. [*Id.* at ¶¶ 26–27]. The City removed. [D.E. 1]. Altidor then filed the FAC as of right.

The FAC pleads nine counts under seven headings. Two counts are labeled "Count IV" and two are labeled "Count VI." Following the City's convention, we refer to the second of each as the "Second Count IV" and the "Second Count VI." [D.E. 31 at 2 & n.1]. The counts are:

1. Count I—Race Discrimination (42 U.S.C. § 1981) [D.E. 15 at ¶¶ 31–60];
2. Count II—National Origin Discrimination (42 U.S.C. § 1981) [*id.* at ¶¶ 61–90];
3. Count III—Retaliation (42 U.S.C. § 1981) [*id.* at ¶¶ 91–100];
4. Count IV—Title VII Race Discrimination [*id.* at ¶¶ 101–120];
5. Second Count IV—Title VII National Origin Discrimination [*id.* at ¶¶ 121–145];
6. Count V—Hostile Work Environment (Title VII) [*id.* at ¶¶ 146–157];

7. Count VI—42 U.S.C. § 1983 (Equal Protection—Race) [*id.* at ¶¶ 158–175];
8. Second Count VI—42 U.S.C. § 1983 (Equal Protection—National Origin) [*id.* at ¶¶ 176–189];
9. Count VII—42 U.S.C. § 1983 (Retaliation—First Amendment) [*id.* at ¶¶ -–201].

Each count realleges an enumerated subset of the factual paragraphs. No count incorporates a preceding count.

## ***II. ANALYSIS***

The City moves to dismiss all nine counts under Rule 12(b)(6) and, alternatively, for a more definite statement under Rule 12(e). [D.E. 31 at 1]. Its arguments fall into six groups: that no count adequately alleges an adverse action or a causal connection; that Counts I through III fail because § 1981 furnishes no standalone claim against a municipality and the pleading does not satisfy *Monell*;[4] that Counts I through III fail to allege discriminatory intent; that Count V does not allege severe or pervasive harassment; that Count VII does not allege protected speech; and that punitive damages are unavailable. We take them in turn, beginning with the standard that governs each.

### ***A. <u>Standard of Review</u>***

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

---

[4] In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court upheld the right to sue local governments under § 1983 for constitutional deprivations committed by or under the direction of that governing body's officers. 436 U.S. 658, 690–91 (1978).

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). Conclusory statements, assertions, or labels will not survive a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw Plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).

The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Importantly, the Court is confined to the four corners of the operative pleading. Documents not attached may be considered only under the incorporation-by-reference doctrine, which requires that the document be "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Neither party has submitted any such document here. Both parties nevertheless argue facts that appear nowhere in the FAC, and we do not consider them.[5]

### ***B. Counts I–III fail because § 1981 provides no cause of action against a municipality and these counts do not invoke § 1983.***

Section 1981 confers rights; it does not, against a state actor, supply a remedy. This much is clear following *Jett v. Dallas Independent School District*, where the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." 491 U.S. 701, 733 (1989). The Eleventh Circuit has clarified that the 1991 addition of § 1981(c) did not disturb that holding: "§ 1983 contains the sole cause of action against state actors for violations of § 1981." *Butts v.*

[5] To illustrate, Plaintiff's Response supplies the names of two comparators, three media outlets and publication dates, an allegation that Internal Affairs was run by the police department, and the assertion that a parallel all-Hispanic promotional list was preserved. None appears in the FAC. The City's Motion, for its part, describes findings by a Personnel Board and the retention of an outside testing vendor, citing paragraphs 8 and 10 of the pleading, which contain neither. We consider none of it.

*County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000). This remains the state of the law today.

Altidor does not contest this. [D.E. 32 at 5]. He argues instead that the FAC "expressly invokes 42 U.S.C. § 1983 as the vehicle for the § 1981 violations." [*Id.*]. It does not—at least not in Counts I through III. The phrase "1983" appears in the pleading six times: in the Introduction, twice in the Jurisdiction and Venue section, and in the headings of Counts VI, Second VI, and VII. [D.E. 15 at ¶¶ A, D; at 24, 26, 28]. It appears nowhere in the body of Counts I, II, or III. And that absence is quite consequential because we cannot then find that any § 1983 claim against "the City" is viable without detailed factual allegations that support that type of claim.

Admittedly the defect is one of form rather than theory, and it is curable. We therefore recommend that Counts I through III be dismissed without prejudice and with leave to replead them under § 1983. But we caution that even with detailed allegations that properly invoke § 1983 remedies, any amendment has the burden of satisfying the strict limitations imposed by the Supreme Court for such claims. Specifically, "under § 1983, local governments are responsible only for 'their *own* illegal acts.' " *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). In other words, "a county is 'liable under section 1983 only for acts for which the county is actually responsible.' " *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc)). Consequently, a municipality's liability under § 1983 may not be based on the doctrine of respondeat superior. *McDowell v.*

*Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (collecting cases). "It is only when the 'execution of the government's policy or custom . . . inflects the injury' that the municipality may be held liable." *Id.* at 1290 (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). A municipality does *not* incur § 1983 liability for injuries caused solely by its employees. *Id.* (citing *Monell*, 436 U.S. at 694). "Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation." *Id.* (citing *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the constitutional violation." *Id.* (citing *Canton*, 489 U.S. at 388).

Assuming Altidor seeks to meet that strict burden, an amended complaint can follow that seeks recovery under § 1983. If Altidor cannot in good faith make such a claim, however, he should instead proceed with the causes of action that he can pursue in this action, which after all are all primarily about how he was discriminated against. A § 1983 claim is not designed to address that type of injury.

### C. ***The examination retake requirement does not support an inference of discrimination.***

Before turning to the counts individually, we address a theory that runs through all of them. Plaintiff alleges that requiring him to retake the oral examination was itself an act of race and national origin discrimination. [D.E. 15 at ¶¶ 54(a), 55, 172(b), 187(e)]. Applying the first prong of *American Dental*—

eliminating allegations that are merely legal conclusions—Plaintiff's assertion that the retake "had no legitimate nondiscriminatory basis and was motivated by race," [*id.* at ¶ 55], is precisely the sort of conclusion that is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

What passes on the second prong—which demands the court accept the well-pled facts as true and determines whether they give rise to a claim for relief—defeats rather than supports the inference. Plaintiff alleges that three candidates passed the examination: himself and two Hispanic candidates who ranked second and third. [D.E. 15 at ¶ 7]. He alleges that the City required "only the three successful candidates" to retake. [*Id.* at ¶ 10]. Accepting both allegations as true and drawing every reasonable inference in Plaintiff's favor, the class of employees burdened by the retake requirement was defined by having passed the examination, not by race or national origin. Another way of stressing the point is to say that those with whom Altidor found himself "similarly situated" are those two (and only those two) other individuals who passed the test. The two comparators Plaintiff himself identifies in the FAC were treated identically.

A claim of disparate treatment requires treatment less favorable than that afforded "similarly situated" persons outside the protected class. *Burke-Fowler v. Orange Cnty.*, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (finding that discrimination claims must consider individuals "similarly situated" with—that is, in a position similar to— the plaintiff). While Plaintiff did plead facts plausibly showing that he faced disparate treatment as a member of an unprotected class, his pleadings show,

when compared with those similarly situated individuals who passed the exam, that he faced *equal* treatment with respect to the protected classes he is situated within. We are "not required to draw plaintiff['s] inference," *Aldana*, 416 F.3d at 1248, and the inference Plaintiff asks us to draw is contradicted by the facts he pleads.

Plaintiff's response is that the retake was set in motion by a baseless challenge from a Hispanic candidate and imposed on a list that a Black candidate topped—a facially neutral act taken for a discriminatory purpose. [D.E. 32 at 7]. The theory may be coherent but the allegation that would carry it—that the City preserved a parallel, all-Hispanic promotional list while abolishing the one on which Plaintiff ranked first—appears only in Plaintiff's response. [*Id.* at 2, 6]. It is *not* in the FAC, which again is a very consequential omission. And, because it is not a document suitable for incorporation by reference, we may not consider it. *Johnson*, 107 F.4th at 1300 (permitting a document outside the four corners of the pleadings to be incorporated by reference when it is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged"); *see also Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004).

We therefore conclude that the retake requirement, as pleaded, does not support an inference of discrimination and cannot sustain any count. This conclusion does not reach the remaining conduct alleged, which we address below.[6]

---

[6] While the Motion attempts to recast or provide an alternative explanation for the decision to require the candidates to retake the examination, the Personnel Board's findings and the retention of an outside testing vendor are not pleaded; the Motion cites them to ¶¶ 8 and 10 of the FAC, which say nothing of the kind. [D.E. 31 at 3

### *D. The Title VII discrimination counts state a plausible claim*

Relief under Title VII is permissible if a plaintiff can assert a claim by showing at least one of two types of discrimination: disparate treatment and pattern or practice of discrimination. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). For a disparate treatment claim, Altidor must plead facts sufficient to satisfy four elements: (i) that he is a member of a protected class, (ii) who suffered an adverse employment action, (iii) that similarly situated persons outside his protected class were treated more favorably, and (iv) that he was qualified to do the job. *E.g., Burke-Fowler*, 447 F.3d at 1323 (11th Cir. 2006).

Plaintiff alleges that City engaged in both forms of discrimination. [D.E. 15 at ¶¶ 38, 55, 68, 87, 118(c), 119, 136(f), 137, 166, 168, 182]. We take each element in turn.

#### *1. Member of a Protected Class*

Altidor's pleadings clearly satisfy the first element. He is a member of a protected racial class as a Black man and a member of a protected national class as a Bahamian national. [D.E. 15 at ¶¶ 104, 123]. He alleges separate claims of discrimination against City for his race and national origin. [D.E. 15 at ¶¶ 91–139].

#### *2. Subjected to an Adverse Employment Action*

To allege an employment discrimination claim, Altidor must show that the City's actions caused a disadvantageous change in his employment conditions.

---

n.2]. Those facts, whatever their merit, are not before the Court on this Motion and are not considered in this Report and Recommendation.

*Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024) ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment."). He does not need to show that the harm he incurred was "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Ibid.* "[G]enerally the denial of a promotion is an adverse employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (citing *Walker v. Mortham*, 158 F.3d 1177, 1187 (11th Cir. 1998)).

Altidor alleges he was denied two promotions, once after he was offered the position outright and second when he engaged in a tryout. [D.E. 15 at ¶¶ 4–7, 10, 18–20]. For the Assistant Chief of Operations, Plaintiff scored first on the required test. At that point, Altidor became situated to take on that position. [*Id.* at ¶ 7] Instead of receiving the promotion, he was ordered to retake the test. [*Id.* at ¶ 10]. The problem, however, is that Altidor has not pleaded that he ever received the promotion.

The situation is better for the position of Deputy Chief of Administration, a position that would have been a promotion, had he received it, and to which he pleads the City offered him through Fire Chief Willians Guerra. [*Id.* at ¶ 18]. He further pleads that he accepted the offer, which then situated him for that promotion. But rather than receiving the promotion, the City dissolved the opening, only to later promote two other non-Black individuals to the position. [*Id.* at ¶ 20].

Clearly, the harms Altidor suffered are different in kind than those in cases like *Walkver v. Muldrow*: his suffered adverse treatment is based on future actions

and responsibilities that he alleges he was entitled to but never received, not that his duties, pay, or other benefits were negatively affected. Nonetheless, taking the pleadings to be true, Altidor was in one instance offered a promotion and in another offered an opportunity to try out for an opening. And during such tryout he tested optimally in relation to his peers. Thus, once he became situated to receive the promotions, whether it be through direct offer or by tryout, stripping Altidor of the situation he reasonably expected to enter into constitutes an adverse action. *See Pennington*, 261 F.3d at 1267.

### *3. Treated less favorably than similarly situated individuals*

A Title VII complaint need not plead a *McDonnell Douglas* prima facie case. It must instead "provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008)); *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002). But the prima facie elements remain a useful guide to what that suggestion requires. And where, as here, a plaintiff relies on comparators, they must be "similarly situated in all material respects." *Lewis v. City of Union City,* 918 F.3d 1213, 1224, 1226–27 (11th Cir. 2019) (*en banc*).

With that in mind, we start with the Assistant Chief of Operations position. The only promotion-related act the FAC ties to this position is the retake. As explained above, the City imposed that requirement on all three candidates who passed, Altidor and the two Hispanic candidates alike. [D.E. 15 ¶¶ 7, 10]. The FAC

does not allege that Altidor retook the examination, what became of the promotional process afterward, or that anyone was promoted to the position. [*Id.* ¶¶ 4–11]. Its assertion that Altidor suffered a "[d]enial and revocation of promotional opportunity" [*id.* ¶ 118(a)] is a label, not a fact. Without an allegation that the City made a promotion decision adverse to Plaintiff, the facts on which he relies, that the City has never promoted a Black Assistant Chief and that Human Resources declined to meet with him [*id.* ¶¶ 11, 17], describe a motive without an act. That is true of the race and national-origin theories alike, and under Title VII and the Equal Protection Clause alike. No plausible claim arises from this position, though if Plaintiff can later allege in good faith what became of the promotional process after the retake and how he was adversely affected, he may do so. *Cf. Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 781–82 (11th Cir. 2024) ("Copeland alleged that, instead of promoting him, GDOC hired equally qualified individuals who are not transgender. But he presented no evidence to support this allegation at the summary judgment stage: there is no evidence at all about those GDOC hired, who did the hiring, or what qualifications were considered.").

Along similar lines, the FAC separately alleges that Internal Affairs investigated a baseless cheating complaint, that no disciplinary findings were made, and that Plaintiff was "publicly labeled a 'cheater'" while similarly situated non-Black candidates were not subjected to comparable scrutiny. [*Id.* ¶¶ 12–16, 54(b)–(c), 118(c)]. But the FAC does not say who labeled Plaintiff a cheater, or how the

investigation, which produced no findings, harmed "an identifiable term or condition of employment." *Walker*, 601 U.S. at 354–55. Again, no plausible claim arises.

That then leads to the Deputy Chief of Administration position. Here the FAC alleges a plausible adverse act, though the counts plead it in different detail. The Title VII counts incorporate only paragraphs 18 through 21 on this subject. [D.E. 15 ¶¶ 101, 121]. Those paragraphs allege the Fire Chief's offer and Altidor's acceptance, the announced abolition of the position, the October 2024 appointment of two Hispanic individuals to "Deputy Chief positions," and the explanation that the City "selected who they wanted." The equal protection counts incorporate those paragraphs and add that the abolition was false, that the position was "reinstated," and that Plaintiff was never reconsidered. [Id. ¶¶ 158, 163–66, 176, 180–81]. These allegations better support a plausible claim.

The City nevertheless responds that the later positions are unidentified and that Plaintiff never alleges he was a candidate. [D.E. 31 at 11]. That argument has more force against the Title VII counts than against the equal protection counts. But even the narrower Title VII allegations describe an accepted offer withdrawn and, months later, the appointment of individuals outside both protected classes to Deputy Chief positions. That sequence still gives rise to an inference of intentional discrimination.[7] Whether the October 2024 appointments filled the same position is a question for discovery.

[7] Altidor's Response [D.E. 32 at 5] persuasively highlights the following facts from the FAC that support discriminatory intent:

We agree in this case that these facts easily raise a plausible inference that the City's promotional decisions were motivated in whole or in part by Plaintiff's race and national origin. *Swierkiewicz,* 534 U.S. at 511. Indeed, the Supreme Court in *Swierkiewicz* held that under a notice pleading system, and when particularity is not required, as is the case for the claims before this Court, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." 534 U.S. at 511. And, *Swierkiewicz* makes clear that "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Id.* (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

Although Altidor has not pleaded every fact that may be required to ultimately prove that he was treated less favorably than the non-Black individuals who also passed the test, the facts pleaded in the FAC establish a plausible claim, though based largely on indirect evidence, that his adverse treatment was, *at least in part*, racially motivated.

---

(1) Plaintiff ranked first on a validated exam; (2) the City has never promoted a Black individual to Assistant Chief of Operations [D.E. 15 ¶ 11]; (3) the City selectively applied its challenge procedures tolerating untimely challenges by Hispanic candidates and abolishing only the list on which a Black candidate ranked first, while preserving a parallel all-Hispanic list; (4) Human Resources met with lower-ranked Hispanic candidates but refused to meet with Plaintiff or a similarly situated Black Division Chief [*Id.* ¶ 17]; and (5) Deputy Chief positions were filled with Hispanic candidates without competitive examination, despite Plaintiff's superior seniority and credentials [*Id.* ¶ 20].

#### *4. Qualified to do the Job*

Altidor pleads he was qualified for the promotions. [D.E. 15 at ¶¶ 1–3, 7, 18]. That is a plausible claim when considered together with Altidor's history of service within the Department, his test scores for the Assistance Chief of Operations position, and that he was offered the position of Deputy Chief of Administration.

Altidor has therefore pled viable discrimination claims with relation to the adverse actions taken against him in relation to the Deputy Chief of Administration position for both his racial and national origin discrimination claims. But even though he has sufficiently shown he was also qualified for the Assistant Chief of Operations Position, he failed to plead enough to establish a claim for that position.

In sum, the Motion should be DENIED as to Count IV, the Second Count IV, Count VI, and the Second Count VI insofar as those counts rest on the Deputy Chief of Administration position. The Motion should be GRANTED insofar as they rest on the Assistant Chief of Operations examination and the supposed cheating scandal.

### ***E. <u>Count V fails to allege that the harassment was based on a protected characteristic</u>***

A prima facie hostile work environment claim under Title VII has five elements:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (citing *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir.2009)). As we have already addressed, the first element is clear: Altidor is a Black man of Haitian descent and of Bahamian national origin. We discuss how the FAC fails to adequately address the remaining elements below.

Altidor pleads that he was subjected to false accusations of cheating, defamatory statements by a supervisory officer, unequal investigative treatment, exclusion from HR processes and promotions, and ongoing reputational attacks by the Department. [D.E. 15 at ¶ 154]. He concludes that there is "a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken after. [*Id.* at ¶ 151].

The City's primary attack focuses on the severity and pervasiveness prong, [D.E. 31 at 15-16], arguing that "the alleged conduct must be both objectively and subjectively severed or pervasive." [D.E. 31 at 15 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993))]. True enough, allegations of simple teasing are not enough to state a claim for relief, *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998), and there are legitimate questions about whether the severity prong is met here. But severity is a totality inquiry better-suited for resolution after the parties have the opportunity to bring forth evidence sufficient for the trier of fact to balance. *Harris*, 510 U.S. at 22–23.

Nevertheless, as the third element requires, the alleged harassment must be "based on" Altidor's membership in the protected group. Here, it appears Altidor believes he is a member of a protected class *because* he reported unlawful activity,

[D.E. 15 at ¶ 151], not directly from his race or national origin, and was the victim of retaliation thereafter. [*Ibid.*]. So, to the extent Altidor has satisfied the causal element, he does so only for a purported "protected class" of whistle blowers, which is *not* a class recognized by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (protecting individuals from discrimination by employers because of their race, color, religion, sex, or national origin). Thus, this hostile work environment claim fails for failure to plead connection between the hostile work environment and Altidor's membership in a protected class.

Although Count V is not literally a retaliation harassment claim, it sounds in a retaliation claim: "Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter." [D.E. 15 at ¶ 151]. But Plaintiff already has a retaliation claim citing many of the same facts, [*id.* at ¶¶ 192-205].

So even reading this claim in the light most favorable to Altidor, it is procedurally faulty. Count V is captioned as a hostile work environment claim, but it pleads at least three theories. It alleges that the incorporated facts "establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting his under Title VII, 42 U.S.C § 2000e et seq., Chapter 760, Florida Statutes." [D.E. 15 ¶ 148]. It alleges that Plaintiff "voiced opposition to unlawful employment practices" and was "the victim of retaliation thereafter." [*Id.* ¶¶ 150–51]. And it alleges "severe and pervasive discriminatory and retaliatory conduct," incorporating the allegations that non-Black candidates were not subjected

to comparable scrutiny and that Human Resources declined to meet with Plaintiff or another Black Division Chief. [*Id.* ¶¶ 16–17, 146, 154].

Those theories are governed by different standards. A discriminatory hostile work environment claim requires harassment "based on" a protected characteristic that is severe or pervasive enough to alter the terms and conditions of employment. *Edwards*, 602 F.3d at 1300. A retaliatory harassment claim under 42 U.S.C. § 2000e-3(a) is governed instead by the Supreme Court's *Burlington* standard. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 857, 862 (11th Cir. 2020) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006)).

Count V treats these different theories and requirements as if they were all one of a kind. Not so. It is thus procedurally deficient because it "commits the sin of not separating into a different count each cause of action or claim for relief" that does not give the defendant fair notice of which standard it must meet. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). The City raised this defect [D.E. 31 at 21–22], and Count V clearly suffers from it. The motion should thus be GRANTED as to this count. And dismissal of Count V without prejudice is thus appropriate to give Altidor one opportunity to plead facts to make a *good faith* showing that the actions were "based on" discrimination of his membership in a protected class. He can then replead any discriminatory hostile work environment claim, any Title VII retaliation claim, and any state-law claim in separate counts, each identifying the protected characteristic or protected activity on which it rests. And, again, if what he is really complaining about is something else

(like the First Amendment retaliation claims) then an amendment would not be in order.

### *F. The equal protection counts adequately allege municipal liability.*

A municipality is not vicariously liable for the constitutional torts of its employees. *Monell*, 436 U.S. at 691 (a municipality "cannot be held liable under § 1983 on a respondeat superior theory"). Liability instead requires that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," caused the injury. *Id.* at 694. One such "official policy" is a single decision by an official who possesses final, unreviewable policymaking authority over the subject matter. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). The City's Motion does not cite *Pembaur*, and the City filed no reply to Plaintiff's Response—so this authority, on which Plaintiff's equal protection theory principally rests, is arguably unrebutted. [D.E. 32 at 9].

Yet, though it does not rebut *Pembaur's* relevance here, the City does contest final-policymaker status. Relying on *Scala v. City of Winter Park,* 116 F.3d 1396 (11th Cir. 1997), it argues that an official's decisions bind the municipality only when they are final and not subject to meaningful administrative review. [D.E. 31 at 13]. *Scala* so holds: "Final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative

review." 116 F.3d at 1401. And *Scala*, like this case, concerned fire department personnel decisions reviewable by a civil service board. *Id.* at 1402–03.

But *Scala* was decided on a summary judgment record, after the city's governing documents and the board's actual practice had been developed. At the pleading stage, "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" *Hoefling v. City of Miami,* 811 F.3d 1271, 1280 (11th Cir. 2016) (quoting Swierkiewicz, 534 U.S. at 510). The FAC alleges that the Fire Chief and "City leadership" are final policymakers [D.E. 15 ¶ 170], and it names the Fire Chief as the official who offered Plaintiff the Deputy Chief position. [*Id.* ¶¶ 18, 162]. Whether the Fire Chief's appointment decisions are subject to meaningful review is a question of Hialeah law that the FAC does not answer and the Motion does not document. *Scala* may prove decisive on a developed record. It does not require dismissal now.

The City's other attacks on this claim focus on the sufficiency of the pleading itself. It is true that Paragraphs 173 and 188 recite, in near-identical language, that "the discriminatory acts were carried out or ratified by final policymakers within the City." [D.E. 15 at ¶¶ 173, 188]. Those are *Iqbal* conclusions, "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. But Paragraph 170 is not a bare recitation: it identifies "final policymakers for the City, including the Fire Chief and City leadership." [*Id.* at ¶ 170]. Read together with the factual allegations naming then-Fire Chief Willians Guerra as the official who offered, the Deputy Chief position, [*id.* at ¶ 18], and identifying the Mayor as among those who certified the promotional

examination results, [*id.* at ¶ 9], Paragraph 170 supplies the identified policymaker that *Pembaur* requires. We note that the FAC does not identify who is alleged to have rescinded the offer Guerra purportedly offered Altidor, only Altidor's conclusion that it was Defendant, though that statement, without more context into who made the statement, also reads as an *Iqbal* conclusion. *See* [*id.* at ¶¶ 19, 163, 179].

But, again, whether Guerra—or the Mayor—in fact held final, unreviewable authority over the promotional and appointment decisions at issue, particularly given the apparent role of a Personnel Board in the retake decision, is a question the pleadings do not and need not answer. Identifying the relevant policymaker under state and local law is ordinarily a legal question for the court, but the inquiry is "fact sensitive" and "requires development of the record." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1125 (N.D. Ga. 2016) (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016)). That is the same conclusion the Eleventh Circuit reached in *Hoefling* itself, and it counsels against resolving the policymaker question against Plaintiff before the City's own organizational and civil-service structure has been developed.

Because Paragraph 170 identifies the Fire Chief as a final policymaker, because *Pembaur* establishes that a single such decision suffices, and because the City has offered no compelling authority to the contrary, the equal protection counts (Count VI and the Second Count VI) adequately allege municipal liability. Other defenses the City can raise to the claims should be reserved for summary judgment or trial. The Motion should be DENIED as to those counts.

### *G. Count VII fails to allege protected citizen speech*

The threshold question in any public-employee First Amendment retaliation claim is whether the employee spoke "as a citizen" on "a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the employee did not speak "as a citizen," the inquiry ends there: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Court has since sharpened that threshold: the "critical question" under *Garcetti* "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

Count VII alleges that Altidor complained to the City's Human Resources Director that District Chief Robert Ortega had violated City media policy and made false, defamatory statements about him, and that he later issued a cease-and-desist letter after the City failed to investigate. [D.E. 15 at ¶¶ 192-93]. What the FAC does not plead is anything about the content of that complaint, the forum in which it was made, its audience, or whether Altidor made it pursuant to his official duties. The City's Motion catalogs these omissions, [D.E. 31 at 19], and the catalog is accurate.

That omission is not incidental under *Lane*; it is dispositive. Altidor's title is not incidental either—Professional Standards and Compliance reads as precisely the department whose institutional function is to receive complaints like the one he made. Whether a complaint to HR about a colleague's policy violation and public

statements was "ordinarily within the scope" of a compliance chief's duties, or was instead the sort of personal-grievance speech that *Garcetti* treats as unprotected, is the *Lane* question, and the FAC supplies no facts with which the Court can answer it. Plaintiff's own description of the speech in his Response—"complaints made by a citizen employee about misconduct affecting his own reputation," [D.E. 32 at 14]—if anything confirms that the complaint was, on this record, personal in character, even as Plaintiff urges the contrary conclusion.

The FAC fails the other half of the threshold inquiry as well. Speech is protected only if it addresses "a matter of public concern," *Garcetti*, 547 U.S. at 418, a question "determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48 (1983). When an employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," a federal court is ordinarily not the forum to review the employer's response. *Id.* at 147. The FAC describes Plaintiff's complaint as concerning "false, defamatory statements made to the media that directly concerned Plaintiff." [D.E. 15 ¶ 192]. Its assertions that the speech addressed "integrity within the Fire Department," "misuse of authority," and "violations of City policy" [*id.* ¶ 194], and that Plaintiff reported "discrimination and corruption" [*id.* ¶ 202], are labels unaccompanied by any fact about what Plaintiff said. As such they are not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 678–79. As pleaded, Count VII describes speech about Plaintiff's own reputation, not speech on a matter of public concern.

Because the FAC does not plead facts sufficient to show that Altidor spoke as a citizen rather than pursuant to his official duties, Count VII fails to state a claim. The motion should be GRANTED as to Count VII that should be dismissed without prejudice, with leave to amend to plead the content, forum, and context of the speech, and the scope of Altidor's actual job duties.

***H. <u>Punitive damages are unavailable against the City.</u>***

Plaintiff seeks punitive damages on every count. Under Title VII, punitive damages may not be recovered from "a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). Under § 1983, a municipality is immune from punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Plaintiff concedes both propositions. [D.E. 32 at 11].

He is correct, however, that the remedy is to strike the demand rather than dismiss the underlying counts. [*Id.*]. The unavailability of one category of damages does not render a cause of action deficient. We recommend that the punitive damages demands be stricken from the prayer for relief in each count.

***I. <u>The alternative request for a more definite statement should be denied.</u>***

Rule 12(e) is available where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Eleventh Circuit has identified four categories of shotgun pleading, of which the most common "by a long shot" is a complaint "where each count adopts the allegations of all preceding counts." *Weiland,* 792 F.3d at 1321–23. Dismissal under Rules 8(a)(2) and 10(b) is warranted only where "it is *virtually impossible* to know which allegations of

fact are intended to support which claim(s) for relief." *Id.* at 1325 (alteration in original) (quoting *Anderson v. District Board of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996)).

This pleading is not of that kind. Each count realleges a specific, enumerated subset of the factual paragraphs, and no count incorporates a preceding count. [D.E. 15 at ¶¶ 31, 61, 91, 101, 121, 146, 158, 176, 190]. That is the opposite of the defect *Weiland* describes. The City filed a twenty-six page motion engaging each count on the merits, which is itself evidence that it could prepare a response.

The genuine defect is the duplicate numbering, which Plaintiff has offered to correct. [D.E. 32 at 7]. That is a repleading matter, not a basis for dismissal, and it will be resolved by the amendment we recommend below.

## ***III. CONCLUSION***

For the foregoing reasons, the Court finds that Counts I through III do not invoke the only vehicle through which § 1981 rights may be enforced against a municipality; that the retake requirement as pleaded does not support an inference of discrimination; that the Title VII discrimination counts and the equal protection counts state a claim; and that the hostile work environment and First Amendment retaliation counts do not. The Motion [D.E. 31] should be **GRANTED IN PART and DENIED IN PART**. Accordingly:

1. Counts I, II, and III should be **DISMISSED WITHOUT PREJUDICE**, with leave to replead under 42 U.S.C. § 1983.

2. The Motion should be **DENIED** as to Count IV and the Second Count IV.

3. Count V should be **DISMISSED WITHOUT PREJUDICE**.

4. The Motion should be **DENIED** as to Count VI and the Second Count VI, but **Granted** in part with regard to Plaintiff's Second Count VI to the extent it alleges discrimination with regard to Plaintiff's pursuit of the Assistant Chief of Operations position.

5. Count VII should be **DISMISSED WITHOUT PREJUDICE**.

6. Plaintiff's demands for punitive damages should be **STRICKEN** from the prayer for relief in each count.

7. The alternative request for a more definite statement should be **DENIED**.

8. Plaintiff should be granted leave to file a Second Amended Complaint within fourteen days, correcting the duplicate count numbering and repleading (if possible in good faith) Counts I through III, Count V, and Count VII consistent with this Report.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal

conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see, e.g., Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 19th day of October, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge